IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLONIAL SURETY COMPANY, a Pennsylvania corporation, | )<br>)<br>) |
| Plaintiff, | ) Case No.: 05-CV-116 ERIE<br>)<br>)<br>) |
| v. | )<br>) |
| FRENCHCREEK TOWNSHIP, NORTHWEST ENGINEERING, INC., a Pennsylvania corporation, and RAYMOND S. WOODARD, ESQ., an individual, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MOTION TO DISMISS PURSUANT TO FEDERAL RULES
OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)
<u>ON BEHALF OF DEFENDANT, NORTHWEST ENGINEERING, INC.</u>**

AND NOW, comes Defendant, NORTHWEST ENGINEERING, INC., a Pennsylvania corporation, by and through its attorneys, John P. Sieminski, Esquire, Robert K. Schweitzer, Esquire and the law firm of Burns, White & Hickton, LLC and files the within Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and in support thereof avers as follows:

**I.  <u>PARTIES</u>**

1. Plaintiff, Colonial Surety Company, ("Colonial") is a Pennsylvania corporation having its office located at 1423 State Road, Duncannon, Pennsylvania 17020. Colonial is an insurance company which is licensed to conduct business in Pennsylvania by the Pennsylvania Insurance Department.

2. Defendant, Frenchcreek Township ("Frenchcreek") is a body politic organized under applicable Pennsylvania law. Frenchcreek's registered office is located in Venango, County at 4507 Georgetown Road, Franklin, Pennsylvania 16323.

3. Defendant, Northwest Engineering, Inc. ("Northwest") is a Pennsylvania corporation having a mailing address of R. R. #1, Box Q, Tidioute, Pennsylvania 16351. Northwest is a civil engineering and consulting firm. Northwest's services were retained by Frenchcreek in connection with the erection and construction of certain pumpstations by Frenchcreek (the "Project").

4. Defendant, Raymond S. Woodard, Esq. ("Woodard") is an adult individual averred to be duly licensed to practice law in the Commonwealth of Pennsylvania, having an office located at 1030 Liberty Street, Franklin, Pennsylvania 16323. At all relevant times hereto, Woodard acted as the Frenchcreek solicitor.

## II. **BACKGROUND**

5. Northwest incorporates Paragraphs 1 through 4 as if the same were more fully set forth at length.

6. On April 15, 2005, Colonial commenced this action by filing a Complaint with this Honorable Court against the above-named Defendants.

7. Colonial's Complaint asserts four (4) causes of actions, without specifically naming what its causes of actions are, against Defendants seeking both equitable and legal relief. Of these causes of actions, Colonial has asserted three (3) of the causes of actions against all Defendants (Counts I-III) and one (1) cause of action against Woodard and Northwest (Count IV). (*See* Complaint generally).

8. Colonial's Complaint pertains to a payment bond and a performance bond that it issued on or about February 15, 2005 to Frenchcreek's contractor, Horizon Construction Group, Inc. ("Horizon"), which was awarded the construction contract for the Project as it was the lowest responsible bidder at Five Hundred Sixty-Seven Thousand Two Hundred-Fifty Dollars ($567,250.00). Horizon was not named by Colonial as a defendant in this lawsuit. (*See* Complaint, at ¶¶ 8-9).

9. Colonial alleges that on February 28, 2005, Northwest wrote a memorandum to Woodard raising concerns about Colonial's ability to fully bond the Project. (*See* Complaint at ¶ 11 and Exhibit "C" to the Complaint).

10. In Northwest's memo to Woodard, attached to the Complaint as Exhibit "C", Northwest stated,

> "We are reviewing performance and payment bonds as they are received. Horizon Construction Group, Inc. will have a contract exceeding $500,000. Their bonding company, Colonial Surety cannot bond a project up to this amount. Horizon is proposing to provide additional surety through another company. The supplemental surety to be written on, Partner Reinsurance Company of the U.S., is not licensed in the state of Pennsylvania. We have found under the notes in the Circular 570 it states the surety does not need to be licensed where the work will take place. However, it must be licensed in the state where it executes a bond."

11. Northwest, thereafter requested in its memo to Woodard, **"Please advise us if this surety for the supplemental coverage can be used."** (See Exhibit "C" to the Complaint.) (Emphasis added).

12. Colonial alleges that Northwest recklessly and falsely stated in its memo to Woodard that Colonial could not bond the Project. (*See* Complaint at ¶ 11).

3

13. Colonial further alleges that Northwest represented to Colonial that Woodard, as Frenchcreek's solicitor, confirmed that Colonial could not bond the Project. (*See* Complaint at ¶ 12).

14. Colonial then alleges on March 2, 2005, that its counsel, Larry L. Miller, Esq., sent Northwest a letter advising of its material error. Colonial incorporates Mr. Miller's letter by reference into the Complaint. (*See* Complaint at ¶ 15 and Exhibit "D" to the Complaint).

15. In Mr. Miller's letter, without any supporting documentation or evidence, he stated in response to Northwest's February 28, 2005 memo that, "you [Northwest] misunderstand Partner Reinsurance's role. It is Colonial's reinsurer. As such it does not have to be licensed for surety in Pennsylvania because Colonial is licensed as a surety." (*See* Exhibit "D" to the Complaint).

16. Colonial then alleges that Northwest, Woodard and Frenchcreek refused to retract their, "reckless and erroneous rejection of Colonial's bonds" and Horizon therefore terminated its surety relationship with Colonial. (*See* Complaint at ¶¶ 17 and 18).

17. Colonial thereafter filed this lawsuit.

18. Colonial alleges that this Court has jurisdiction, "based upon the federal funding of the Project, an erroneous interpretation of the Treasury Regulations and ancillary jurisdiction over the state law claims." (*See* Complaint at ¶ 21).

19. Colonial alleges in Count I that all Defendants erroneously interpreted applicable treasury regulations and seeks a declaration that its bonds fully complied with applicable treasury regulations and Project specifications.

20. Colonial alleges in Count II that all Defendants have tortiously and intentionally interfered with Colonial's present and prospective contracts with Horizon and other local contractors and requests that this Court enter judgment in its favor for damages it has incurred.

21. Colonial asserts in Count III that Defendants made, published and disseminated false, defamatory and slanderous representations which have caused Colonial to lose customers and seeks judgment that it has been damaged by Defendants' defamatory communications.

22. Finally, Colonial asserts in Count IV a negligent misrepresentation claim against Northwest and Woodard as it alleges in Paragraph 65 that it has suffered substantial damages as a result of Northwest's and Woodard's negligent misrepresentations.

### III. APPLICABLE STANDARD

#### A. Federal Rule of Civil Procedure 12(b)(1)

23. Northwest incorporates paragraphs 1 through 22 as if the same were more fully set forth at length.

24. When subject matter jurisdiction is challenged under Rule 12(b)(1) the Plaintiff bears the burden of persuasion to convince the court that it has jurisdiction.

25. In considering a motion to dismiss under Rule 12(b)(1), the Court may consider and weigh evidence outside the pleadings to answer the jurisdictional question.

26. A claim may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction if a claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous."

### B.      Federal Rule of Civil Procedure 12(b)(6)

27. Northwest incorporates paragraphs 1 through 26 as if the same were more fully set forth at length.

28. In ruling upon a Motion to Dismiss under Rule 12(b)(6) the court must consider the allegations in the complaint. Matters of public record, items appearing in the record of the case and exhibits attached to the complaint may be taken into account without converting a Rule 12(b)(6) motion into a motion for summary judgment.

29. A complaint is properly dismissed if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claims that would entitle plaintiff to relief.

### C.      Colonial's Complaint Should be Dismissed Pursuant to Rule 12(b)(1) Because It Has Not Alleged that Defendants Violated any Federal Law or Statute so as to Grant this Court Subject Matter Jurisdiction.

30. Northwest incorporates paragraphs 1 through 29 as if the same were more fully set forth at length.

31. Applying the standard of review set forth above, Colonial has not alleged that Defendants, in general, and Northwest, in particular, have violated any federal law or statute that gives rise to a federal cause of action that supplies a basis for jurisdiction in this matter.

32. Rather, Colonial states that this Court has jurisdiction based upon the federal funding of the Project and on an allegedly erroneous interpretation of Treasury Regulations by Defendants. (*See* Complaint at ¶ 21).

33. Despite making these allegations, Colonial has not alleged anywhere in its complaint that Defendants in general, and Northwest in particular, violated any federal law or statute pertaining to federal funding of the construction project. In fact, Paragraph 21 is the only paragraph where federal funding is mentioned.

34. Further, in Exhibit "D" to the complaint, Colonial's counsel affirmatively indicated that the Treasury Regulations are not applicable—"**This is not a federal bond and the Treasury direct limits are not relevant to a bond for Frenchcreek Township.**" (*See* Exhibit "D" to the Complaint).

35. Colonial can neither assert that this Court has subject matter jurisdiction nor raise a cause of action seeking a declaration that its bonds fully complied with Treasury Regulations and Project specifications when it states in a letter written by its counsel, which is an exhibit to its complaint, that the bonds issued were not federal bonds and that Treasury Regulation limits were not relevant to the Project. By Colonial's own admission then, Count I of Colonial's Complaint is not supported by facts that would give this Court subject matter jurisdiction. In the absence of a federal question, there is obviously a lack of the requisite diversity and amount in controversy required for this Court to maintain subject matter jurisdiction.

36. Counts II-IV of Colonial's Complaint raise state tort claims which are not within this court's subject matter jurisdiction.

37. Colonial's jurisdictional allegations are "wholly insubstantial and frivolous" and were "made solely for the purposes of obtaining jurisdiction.

Wherefore, for the foregoing reasons, Colonial's Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**D. In the Alternative, Colonial's Complaint Should be Dismissed Pursuant to Rule 12(b)(6) as it Fails to State any Cause of Action Upon Which Relief Can be Granted.[1]**

**1. Count I: Declaratory Judgment.**

38. Northwest incorporates paragraphs 1 through 37 as if the same were more fully set forth at length.

39. In Count I of its Complaint, Colonial has requested a declaration from the court that its bonds fully complied with applicable Treasury Regulations and Project specifications.

40. However as set forth above, Colonial admits in Exhibit "D" to its Complaint that Treasury Regulations, allegedly erroneously interpreted by Defendants, are not applicable. Therefore, Colonial cannot prove any set of facts that could entitle it to relief and Count I must be dismissed under Rule 12(b)(6).

Wherefore, for the foregoing reasons, Colonial's Complaint should be dismissed pursuant to Rule 12(b)(6) as it has failed to state a cause of action upon which relief can be granted.

---

[1] As stated above, Counts II-IV in Plaintiff's Complaint are state law tort claims and Pennsylvania law is therefore applicable.

## 2. Tortious and Intentional Interference with Contractual Relations.

41. Northwest incorporates paragraphs 1 through 40 as if the same were more fully set forth at length.

42. The necessary elements to prove a cause of action for tortious interference with contractual relations are that:

    a. the acts complained of were intentional and willful;

    b. the acts were calculated to cause damage to the plaintiff in its business; and

    c. the acts were done with unlawful purpose of causing damage and loss without right or justifiable cause and that actual damage and loss resulted.

43. The necessary elements to prove a cause of action for intentional interference with contractual relations are:

    a. the existence of a contractual relationship;

    b. an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;

    c. the absence of a privilege or justification for such interference; and

    d. damages resulting from the defendant's conduct.

44. In analyzing a claim for intentional interference with contractual relations, Pennsylvania courts have traditionally applied Section 767 of the Restatement (Second) of Torts which provides, "in determining whether an actor's conduct in intentionally

interfering with a contract or a prospective contractual relation of another is improper or not, consideration is giving to the following factors;

      a.    the nature of the actor's conduct;

      b.    the actor's motive;

      c.    the interests of the other with which the actor's conduct interferes;

      d.    the interests sought to be advanced by the actor;

      e.    the social interests in protecting the freedom of action of the actor and the contractual interests of the other;

      f.    the proximity or remoteness of the actor's conduct to the interference; and

      g.    the relations between the parties." Id.

45.    Further, comment (b) to Section 767 provides:

> "The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors." Id.

46.    Colonial cannot show either intentional or tortious interference with contractual relations by Northwest.

47.    The memo that Northwest sent to Woodard, which Colonial has attached to its Complaint as Exhibit "C" in support of its allegations, clearly shows that its purpose was neither to intentionally and willfully interfere with Colonial's contractual relations

10

with Horizon nor was it calculated to cause damage to Colonial's business as is required to prove a cause of action for tortious or intentional interference with contractual relations.

48. Rather, the memo requests that Woodard, as Frenchcreek's solicitor, in response to Horizon's proposal to provide additional surety through Partner Reinsurance Company of the U.S., " . . . advise us [Northwest] if this surety [Partner Reinsurance Company of the U.S.] for the supplemental coverage can be used [for the Project]."

49. As a result, Colonial cannot establish causation between Northwest's memo to Woodard and its purported damages.

50. Colonial also cannot show either tortious or intentional interference with contractual relations by Northwest because it cannot show causation between Northwest's memo and purported damages as to "prospective" contracts with Horizon and other contractors as alleged in Paragraph 29 of its Complaint because Colonial plainly admits on the face of its Complaint that the contracts are prospective—not actual—contractual relationships.  Colonial has stated in Paragraph 39 of its Complaint that, "its contractual relationships with other local contractors **may be** detrimentally affected and interfered with as well." (Emphasis added).  Colonial readily admits that its damages are uncertain.  Under Pennsylvania law, damages must be proved with reasonable certainty.  Therefore, it is impossible for Colonial to prove actual damages

and Count II of Colonial's Complaint must also be dismissed as it pertains to **"prospective"** contractual relations.[2]

Wherefore, for the foregoing reasons, Colonial's Complaint should be dismissed pursuant to Rule 12(b)(6) as it has failed to state a cause of action upon which relief can be granted.

### 3. **Defamation.**

51. Northwest incorporates Paragraphs 1 through 50 above by reference as if the same were more fully set forth at length.

52. Under Pennsylvania law, there are two kinds of defamation: (1) libel, which is written or printed material which is defamatory; and (2) slander, which arises from defamatory words that are spoken.

53. Adjudication of a defamation case involves both state and federal law inquiries. Although replete with Federal Constitutional First Amendment implications, a defamation suit fundamentally is a state cause of action. A court must determine whether the defendant has harmed the plaintiff's reputation within the meaning of state law and, if so, whether the First Amendment precludes recovery.

---

[2] Additionally, Count II of Colonial's Complaint as it pertains to **"prospective"** contractual relations should also be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction as, pursuant to Article III of the Constitution, Federal courts may only adjudicate actual cases or controversies. Because the events pertaining to prospective contracts have not occurred, the court is precluded from exercising subject matter jurisdiction as a real case or controversy does not exist. *See Philadelphia Federation of Teachers, et al v. Thomas J. Ridge, in his official capacity as Governor of the Commonwealth of Pennsylvania*, 150 F.3d 319, 322 (3d Cir. 1998). "The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." Id. "One aspect of justiciability is ripeness which determines when a proper party may bring an action." Id. "The function of the ripeness doctrine is to prevent federal courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Id. (Internal citations omitted).

54. Under Pennsylvania law, in a defamation action, when properly raised, the plaintiff has the burden of proving:

    a. the defamatory character of the communication;

    b. its publication by the defendant;

    c. its application to the plaintiff;

    d. the understanding by the recipient of its defamatory meaning;

    e. the understanding by the recipient of it as intended to be applied to the plaintiff;

    f. special harm resulting to the plaintiff from its publication; and

    g. abuse of a conditionally privileged occasion.

55. A communication is defamatory if it tends to harm the reputation of another so as to lower that person in the estimation of the community or to deter third persons from dealing with that person.

56. Statements cannot be judged defamatory merely because they are annoying and embarrassing to the person at whom they are directed. He or she must have suffered the kind of harm that has grievously fractured his standing in the community of respectable society.

57. A court must view alleged defamatory statements in context.

58. A cause of action for defamation must be proved by clear and convincing evidence.

59. Colonial's Complaint does not establish a cause of action for defamation.

60. In Count III, Colonial alleges that Defendants made false oral and written communications pertaining to Colonial's ability to write bonds for the Project which have impugned Colonial's integrity with respect to its business. (*See* Complaint at ¶¶ 41 and 42).

61. Colonial generally asserts that Defendants published the false statements to Colonial's customers, yet it has failed to identify the specific oral and written communications that were disseminated to Colonial's customers or Colonial's customers that were the recipients of such information so as to meet the publication requirement set forth under Pennsylvania law. (*See* Complaint at ¶ 45).

62. If Colonial is basing its defamation claim on Northwest's February 28, 2005 memo to Frenchcreek's solicitor, Woodard, attached to the Complaint as Exhibit "C", this communication does not rise to the level of defamation as it is clear on its face that the memo did not intend to harm the reputation of Colonial to others so as to deter Horizon or other unidentified customers of Colonial from dealing with it.

63. The memo attached was sent from Northwest to Woodard. No other parties were addressees on and/or to this memo.

64. Further when read in context, it is clear that the alleged communications pertaining to Colonial's ability to write bonds for the Project are not defamatory. A court must view alleged defamatory statements in context.

65. In the memo, Northwest explains to Woodard that Horizon, not Northwest, "is proposing to provide additional surety through another company. The supplemental surety to be written on, Partner Reinsurance Company of the U.S., is not licensed in the

14

State of Pennsylvania. We have found under the notes in the Circular 570 it states the surety does not need to be licensed where the work will take place. However, it must be licensed in the state where it executes a bond."

66. Northwest concluded its memo to Woodard by saying, "we are attaching all the information received so you may review. **Please advise us if this surety for the supplemental coverage can be used."** (Emphasis added).

67. As is clear from an objective reading of the memo, it was not intended to harm Colonial's reputation. The memo was sent to Woodard requesting that he render an opinion as to whether Partner Reinsurance Company of the U.S. could provide supplemental coverage on the Project. There are no libelous or slanderous communications anywhere in this memo.

Wherefore, for the foregoing reasons, Colonial's claim for defamation should be dismissed pursuant to Rule 12(b)(6) as Colonial has failed to state a claim upon which relief can be granted.

### 4. Negligent Misrepresentation.

68. Northwest incorporates paragraphs 1 through 67 by reference as if the same were more fully set forth at length.

69. Colonial has brought a negligent misrepresentation claim in Count IV of its Complaint.

70. The elements necessary to maintain a cause of action for negligent misrepresentation are:

      a.      Misrepresentation of a material fact;

      b.      Made under circumstances in which the misrepresenter ought to have known of its falsity;

      c.      With intent to induce another to act upon it;

      d.      Which results in injury to a party acting in justifiable reliance on the misrepresentation.

71. Colonial cannot state a cause of action for negligent misrepresentation as, by Colonial's own admission, there was no intent.

72. In Paragraph 56 of its Complaint, Colonial has stated that Defendant, "erroneously interpreted the Treasury Regulations."

73. Colonial, by its own language, admits that, Northwest's and Woodard's "interpretation" of the Treasury Regulation was at most an error.

74. Alleged mere errors in interpretation of Treasury Regulations do not rise to the level of negligent misrepresentation as there is no intent.

Wherefore, Colonial's claim for negligent misrepresentation should be dismissed pursuant to Rule 12(b)(6) as Colonial has failed to state a claim upon which relief can be granted.

      Respectfully submitted,

      BURNS, WHITE & HICKTON

      By: *John P. Sieminski*
           John P. Sieminski, Esquire
           Pa. I.D. #58991
           jpsieminski@bwhllc.com

Robert K. Schweitzer, Esquire
Pa. I.D. #87649

Four Northshore Center
106 Isabella Street
Pittsburgh, PA  15212

412-995-3000

## CERTIFICATE OF SERVICE

I, John P. Sieminski, Esquire, hereby certify that a true and correct copy of the within **MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) ON BEHALF OF DEFENDANT NORTHWEST ENGINEERING, INC.** was served on counsel listed below via first class mail, postage prepaid, this 11th day of August, 2005.

| | |
|---|---|
| Larry L. Miller, Esquire<br>Miller Law Offices PC<br>1423 State Road<br>Duncannon, PA  17020<br>*(Counsel for Colonial Surety Company)* | John L. Kwasneski, Esquire<br>Law Offices of Paul T. Grater<br>Two Gateway Center, Suite 1673<br>Pittsburgh, PA  15222<br>*(Counsel for Frenchcreek Township and Raymond Woodard, Esq.)* |

BURNS, WHITE & HICKTON, LLC


By: *John P. Sieminski*
      John P. Sieminski, Esquire
      Robert K. Schweitzer, Esquire