```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF PENNSYLVANIA
_____
COLONIAL SURETY COMPANY          :
                                 :    ELECTRONICALLY FILED
            Plaintiff            :
                                 :
        v.                       :    DOCKET NO. 05-116 Erie
                                 :
FRENCHCREEK TOWNSHIP             :
NORTHWEST ENGINEERING, INC.      :
RAYMOND S. WOODARD, ESQ.         :
                                 :
            Defendants           :
```

BRIEF OF COLONIAL SURETY COMPANY
IN OPPOSITION TO THE MOTION TO DISMISS
<u>OF NORTHWEST ENGINEERING, INC</u>.

I.   **PROCEDURAL HISTORY**

Colonial Surety Company ("Colonial") filed its Complaint on April 15, 2005 against Northwest Engineering, Inc. ("Northwest"), Frenchcreek Township ("Township"), and Raymond S. Woodard, Esquire based upon damages they caused Colonial by their wrongful rejection of Colonial's bonds for the Frenchcreek Township - Contract 97134-5, Pump Stations 1, 2, and 3 project ("Project") that was being funded by the U.S. Department of Agriculture. Defendants Township and Woodard answered the Complaint and filed a Cross-claim against Northwest.

Northwest filed a Motion to Dismiss on or about August 11, 2005 and supporting Brief. This Brief is filed by Colonial in opposition to Northwest's motion.

II. **COUNTERSTATEMENT OF FACTS**

Colonial is a Pennsylvania insurance company that writes surety bonds for contractors. Colonial had a good business relationship with Horizon Construction Group, Inc. ("Horizon") who was the low bidder on the Township's Project on which Northwest was the engineer and Mr. Woodard was the Township's solicitor. The Project was federally funded and administered through the Rural Development, Department of Agriculture.

Horizon sought the necessary performance and payment bonds from Colonial and on February 15, 2005, Colonial issued the bonds and billed Horizon for them. The bonds fully complied with all applicable federal regulations and the Project specifications. Despite this, Northwest by memo dated February 28, 2005, outrageously wrote that Colonial could not bond the Project. Northwest relied upon the Treasury regulations in rejecting Colonial's bonds. Northwest sent the memo containing the false statement to Colonial's customer and the Township. Mr. Woodard failed and refused to correct Northwest's wrongful rejection of Colonial's bonds.

Northwest knew of Colonial's surety relationship with Horizon and copied Colonial's customer on its memo with the intent to force Horizon to obtain a different surety.[1]  As a direct result of Northwest's actions, Horizon terminated its relationship with Colonial.

Northwest's actions were reckless and wilful.  While the initial February 28, 2005 memo may have been the result of mere recklessness, after Colonial's counsel advised Northwest of its error, its actions subsequent to March 2, 2005 were intentional and wilful.  Northwest wilfully failed and refused to correct its improper rejection of Colonial's bonds even though it knew its actions were baseless and would directly cause Colonial substantial damages.

The Project was funded by the U.S. Department of Agriculture ("U.S.D.A."). The U.S.D.A.'s regulations required that the Project be bonded.  See 7 C.F.R., Rural Utilities Service, U.S.D.A., §1780.75.[2]  Colonial's bonds fully complied with the U.S.D.A.'s regulations and Treasury Circular 570.  Thus,

---

[1] Because sureties require indemnification agreements from their principals and the owners of the companies, only one surety will write a contractor at any given time.  Thus, by wrongfully rejecting Colonial's bonds, Defendants knew that Horizon would be required to terminate its contractual relationship with Colonial and to find a new surety.

[2] Section 1780.75(c) provides, in part, "Companies providing performance bonds and payment bonds must hold a certificate of authority as an acceptable surety on Federal bonds as listed in Treasury Circular 570 as amended and the surety must be listed as having a license to do business in the State where the facility is located."

Defendants' rejection of Colonial's bonds based upon the Treasury's and U.S.D.A.'s regulations was completely erroneous.

Section 28.202 of Volume 48 of the Code of Federal Regulations sets forth the rules for acceptability of corporate sureties under Circular 570. Section 28.202(2) reads:

> The penal amount of the bond should not exceed the surety's underwriting limit stated in the Department of the Treasury circular. If the penal amount exceeds the underwriting limit, the bond will be acceptable only if (i) the amount which exceeds the specified limit is coinsured or reinsured and (ii) the amount of coinsurance or reinsurance does not exceed the underwriting limit of each coinsurer or reinsurer.

Colonial's bonds were acceptable because the amount exceeding Colonial's specified underwriting limit was reinsured and the amount of the reinsurance did not exceed the underwriting limit of Colonial's reinsurer, Partner Reinsurance. Colonial's current underwriting limit is $576,000 and Partner Reinsurance's is $48,740,000.

Section 28.202(3) concerns reinsurance agreements and reads:

> Coinsurance or reinsurance agreements shall conform to the Department of the Treasury regulations in 31 CFR 223.10 and 233.11. When reinsurance is contemplated, the

> contracting office generally shall require reinsurance agreements to be executed and submitted with the bonds before making a final determination on the bonds.

Section 28.202(4) concerns the required form reinsurance agreements and reads:

> When specified in the solicitation, the contracting officer may accept a bond from the direct writing company in satisfaction of the total bond requirement of the contract. This is permissible until necessary reinsurance agreements are executed, even though the total bond requirement may exceed the insurer's underwriting limitation. The contractor shall execute and submit necessary reinsurance agreements to the contracting officer within the time specified on the bid form, which may not exceed 45 calendar days after the execution of the bond. The contractor shall use Standard Form 273, Reinsurance Agreement for the Miller Act Performance Bond, and Standard Form 274, Reinsurance Agreement for a Miller Act Payment Bond, when reinsurance is furnished with Miller Act bonds. Standard Form 275, Reinsurance Agreement in Favor of the United States, is used when reinsurance is furnished with bonds for other purposes.

The Treasury regulations provide that: "When reinsurance is contemplated, federal agencies may accept a bond from the direct writing company in satisfaction of the total bond requirement even though it may exceed the direct writing company's underwriting limitations." 31 C.F.R. §223.11(b). Colonial timely provided a Certificate of Re-Insurance to Defendants and it was again produced with the letter of March 2, 2005, Exhibit "D" to Colonial's

Complaint. These provisions are also expressly set forth in Treasury Circulars 570 and 297.

The determination of whether Defendants' actions were wrongful solely depends upon the Court's interpretation of the applicable regulations of the U.S.D.A. and Treasury and the Treasury Circulars.

### III. ISSUES PRESENTED

    A.    DOES THIS COURT HAVE JURISDICTION TO DETERMINE IF COLONIAL'S BONDS WERE WRONGFULLY REJECTED UNDER THE TREASURY'S AND U.S.D.A'S REGULATIONS ON THIS FEDERALLY FUNDED PROJECT?

          Suggested Answer:   Yes.

    B.    HAS COLONIAL STATED A CAUSE OF ACTION FOR A DECLARATORY JUDGMENT THAT ITS BONDS FULLY COMPLIED WITH THE FEDERAL REGULATIONS AND THE PROJECT SPECIFICATIONS FOR THIS FEDERALLY FUNDED PROJECT?

          Suggested Answer:   Yes.

    C.    HAS COLONIAL STATED A VALID CAUSE OF ACTION AGAINST DEFENDANTS FOR INTENTIONAL INTERFERENCE WITH EXISTING AND FUTURE CONTRACT RIGHTS?

          Suggested Answer:   Yes.

    D.    HAS COLONIAL STATED A VALID CAUSE OF ACTION AGAINST DEFENDANTS FOR TRADE LIBEL?

          Suggested Answer:   Yes.

    E.    HAS COLONIAL STATED A VALID CAUSE OF ACTION AGAINST NORTHWEST AND MR. WOODARD FOR NEGLIGENT MISREPRESENTATION?

          Suggested Answer:   Yes.

## IV.  ARGUMENTS

    A.    *THIS COURT HAS JURISDICTION TO DETERMINE IF COLONIAL'S BONDS WERE WRONGFULLY REJECTED UNDER THE TREASURY'S AND U.S.D.A'S REGULATIONS ON THIS FEDERALLY FUNDED PROJECT.*

Northwest's Motion to Dismiss is frivolous.

Colonial issued bonds for this Rural Development funded project. The federal project is being administered by the U.S.D.A. U.S.D.A.'s regulations required that the surety on the bonds be Treasury listed on Treasury Circular 570 and be licensed in the State where the project is located. Colonial was T-listed and licensed in Pennsylvania, its home forum. See Exhibit "F" to Colonial's Complaint and 7 C.F.R. §1780.75(c). Northwest has represented to Colonial that the project specifications required that the surety be T-listed.[3] Colonial's bonds were wrongfully

---

[3] Colonial assumes this is correct based upon the federal requirements. Northwest and the other Defendants have failed and refused to furnish the project specifications despite repeated requests by Colonial. Defendants should have furnished the project specifications pursuant to Rule 26 but, have not. These will be obtained through discovery. Also, the U.S.D.A. has refused to furnish copies of the funding documents and those

rejected by Northwest based upon its grossly erroneous interpretation of the federal regulations.

"Federal courts have jurisdiction over matters in which a federal question is presented on the face of the well-pleaded complaint." 40235 Washing Street Corp. v. Lusardi, 329 F.3d 1076, 1079 (9th Cir. 2003).  "[A] well pleaded complaint presents a federal question if the plaintiff's right to . . . relief 'necessarily turn[s] on some construction of federal law.'" Id. citing Yokeno v. Mafnas, 973 F.2d 803, 807 (9th Cir. 1992) quoting Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1,9 (1983).  In this case, it would be impossible to address Colonial's claim that its bonds were wrongfully rejected under the federal regulations without addressing the federal regulations that form the basis of the wrongful rejection.  Therefore, there is obviously federal jurisdiction.

Just like in Guardian Nat. Acceptance v. Swartzlander Motors, 962 F. Supp. 1137, 1142 (N.D. Ind. 1997), Colonial's claims are integrally tied to a federal question - whether Colonial's bonds violated the U.S.D.A.'s regulations and Treasury's regulations and Circulars.  The federal courts have consistently

---

related to the surety requirements.  These are being obtained through a Freedom of Information Act request by Colonial.  Had these documents been provided by Defendants and the U.S.D.A., it is believed they would further demonstrate the surety requirements were completely federally based and controlled.

upheld federal question jurisdiction on claims that involve the interpretation of federal regulations.  Id.

> The Supreme Court has held that a plaintiff's right to relief presents a substantial question of federal law if the claim is 'such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.'

Id. quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936).

Defendants herein claimed Colonial's bonds were invalid under the applicable federal regulations and Colonial contends they were not.  It cannot be disputed that the U.S.D.A.'s and Treasury's regulations and Circulars arise under federal law or that their interpretation is governed by federal law.  Because Colonial must establish that its bonds fully complied with the applicable federal regulations to sustain its claims, reliance on federal law is essential to the success of Colonial's action.  See Id. at 1143. See also, Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994) (presence of issues which require the interpretation of federal regulation necessarily give rise to federal questions sufficient to invoke federal jurisdiction); Rustevader Corp. v. Cowatch, 842 F. Supp. 171, 174 (W.D. Pa. 1993) (contract claims depended upon resolution of substantial federal question under federal law). Accordingly, Colonial's Complaint presents a substantial question of federal law under the U.S.D.A.'s and Treasury's regulations and

thus, arises under federal law. See also Bryan v. Bellsouth Communications, Inc., 377 F.3d 424, 432 (4th Cir. 2004) (plaintiff's requested relief necessarily depended upon resolution of substantial question of federal law); Williams v. Midwest Express Airlines, Inc., 315 F. Supp.2d 975, 980 (E.D. Wis. 2004).[4]

Also, because Colonial's bonds were required for this federally funded project by the U.S.D.A.'s regulations, jurisdiction is also arguably present under 28 U.S.C. §1352. Because Colonial's bonds were required by 7 C.F.R. §1780.75(c), this Court also has subject matter jurisdiction under 28 U.S.C. §1352. Del Hur, Inc. v. National Union Fire Ins. Co., 94 F.3d 548, 549 (9th Cir. 1996). "[A] bond issued pursuant to a federal regulation is executed under a law of the United States." Id. at 550. Colonial's bonds for this federally funded project were required by the U.S.D.A.'s regulations.

  B.  *COLONIAL HAS STATED A CAUSE OF ACTION FOR A DECLARATORY JUDGMENT THAT ITS BONDS FULLY COMPLIED WITH THE FEDERAL REGULATIONS AND THE PROJECT SPECIFICATIONS FOR THIS FEDERALLY FUNDED PROJECT.*

Northwest's argument is frivolous. See Section A. above. Colonial obviously seeks a declaration that its bonds fully

---

[4] Northwest's citation to Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3rd Cir. 1991) is not relevant. Plaintiffs in that case failed to properly allege a RICO claim. Unlike this case, the issues presented were not dependent upon an interpretation of federal law. Plaintiffs therein simply failed to plead a pattern of racketeering activity. Id. at 1408.

complied with the applicable federal regulations and that Defendants' determination that Colonial's bonds were invalid under the federal regulations was completely erroneous.

    C.    *COLONIAL HAS STATED A VALID CAUSE OF ACTION AGAINST NORTHWEST FOR INTENTIONAL INTERFERENCE WITH EXISTING AND FUTURE CONTRACT RIGHTS.*

Colonial has stated a valid cause of action for intentional interference with its contractual rights. Colonial has averred all of the required elements of this claim: that Northwest knew of Colonial's surety relationship with Horizon; that Northwest acted wilfully in interfering with Colonial's relationship with Horizon; that Northwest's actions were not justified; and, that as a direct result, Colonial suffered substantial damages.[5] Northwest's suggestion that Colonial cannot prove its claim is erroneous and obviously not relevant to whether Colonial has stated a valid claim.[6]

---

[5] Northwest's citation to <u>Small v. Juniata College</u>, 682 A.2d 350 (Pa. Super. 1996) has little relevance as it involved a motion for summary judgment based upon the demonstrated facts. Colonial has, in contrast, stated a valid claim under Pennsylvania common law. See <u>Triffin v. Janssen</u> 626 A.2d 571, 574 (Pa. Super. 1993).

[6] Northwest's argument that Colonial has not properly averred damages is false. Colonial lost the premium on the bonds for this Project and its good customer, Horizon, forever. Colonial expects that discovery will show that other clients were lost by Defendants' actions as well.

D.   *COLONIAL HAS STATED A VALID CAUSE OF ACTION AGAINST DEFENDANTS FOR TRADE LIBEL.*

Colonial, a surety, survives solely on its reputation and by its bonds being accepted when issued. Herein, Colonial issued bonds for its good customer and Northwest outrageously said the bonds were invalid. Even worse, Northwest falsely claimed that Colonial could not write bonds over $500,000.[7] Nothing could have been more slanderous to a surety company that survives on the extension and acceptance of its credit.

Colonial's averments actually establish a *per se* libel claim under Pennsylvania law. Under Pennsylvania law, defamation *per se* can be words imputing business misconduct. <u>Synygy, Inc. v. Scott-Levin, Inc</u>., 51 F. Supp.2d 570, 580 (E.D. Pa. 1999). Defendants' claim that Colonial was issuing invalid, illegal bonds could not have imputed greater misconduct to a surety. A statement is also defamatory if it tends to harm the reputation of or deter third persons from associating or dealing with the defamed entity. <u>Id</u>. at 580; <u>Momah v. Albert Einstein Medical Center</u>, 978 F. Supp. 621, 634 (E.D. Pa. 1997). Herein, Horizon immediately ceased dealing with Colonial upon hearing Northwest's defamatory remarks.

---

[7] While Colonial's direct federal underwriting limitation is $576,000, <u>see</u> Circular 570 on Department of Treasury website, Colonial's reinsurer, Partner Reinsurance, has an underwriting limitation of $48,740,000. <u>Id</u>. The Treasury regulations clearly provide that anything over the direct underwriting limitation may be covered by reinsurance. <u>Id</u>. <u>See also</u> 48 C.F.R. §28.202.

> A statement is defamatory *per se* as an accusation of business misconduct if it 'ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business.'

Clemente v. Espinosa, 749 F. Supp. 672, 677-78 (E.D. Pa. 1990) quoting *Restatement (Second) of Torts* §573 (1977). Northwest obviously claimed that Colonial was not capable of legally performing its sole business, that of writing surety bonds for its customers. Also, Northwest's false claims obviously were of the type that are the death knell for a credit extending company that survives upon its financial integrity and business reputation. Id. at 678. See also Lin v. Rohm and Haas Co., 293 F. Supp.2d 505, 520 (E.D. Pa. 2003). Northwest's false statements went right to the very integrity of Colonial's business. See McDonnell v. City of Lancaster, 24 D & C.3d 120, 127 (C.P. Lanc. 1982).

Further, contrary to Northwest's false suggestion, "if the underlying facts are false, the opinion is not protected." Momah v. Albert Einstein Medical Center, 978 F. Supp. 621, 634 (E.D. Pa. 1997) citing Simms v. Exeter Architectural Products, 916 F. Supp. 432, 437 (M.D. Pa. 1996). Thus, because Northwest's false words imputed to Colonial dishonesty in the conducting of its

-13-

financial business, Northwest's false averments were libelous *per se*. Diamond v. Krasnow, 7 A.2d 65, 68 (Pa. Super. 1939).[8]

    E.    *COLONIAL HAS STATED A VALID CAUSE OF ACTION AGAINST NORTHWEST AND MR. WOODARD FOR NEGLIGENT MISREPRESENTATION.*

The Pennsylvania Supreme Court just adopted Section 552 of the *Restatement* as the law in Pennsylvania. Bilt-Rite v. The Architectural Studio, 866 A.2d 270, 287 (Pa. 2005). It makes professionals liable for negligently supplying information when it is foreseeable that the information will be used and relied upon by third parties. Herein, Northwest and Mr. Woodard negligently and recklessly informed Colonial's customer, Horizon, and the Township that Colonial's issued bonds were invalid. Defendants Northwest and Mr. Woodard knew that Horizon and the Township would rely upon the information they furnished and in fact, both did. Colonial's bonds were improperly rejected by the Township and Horizon was forced to find a new surety. Colonial's Complaint states a valid cause of action against Northwest for negligent misrepresentations under Bilt-Rite. See also Travelers Casualty & Surety Company v.

---

[8] Like its other citations, Northwest's cite to a public figure case, Tucker v. Philadelphia Daily News, 848 A.2d 113 (Pa. 2004) has no relevance to this trade libel claim. Tupak Shakur's lyrics regarding a well known black politician are obviously unrelated to Northwest's false claims that Colonial could not legally perform its business and was issuing invalid bonds.

Dormitory Authority of the State of New York, 2005 W.L. 1177715 (S.D. N.Y. 2005).[9]

**V.  CONCLUSION**

Northwest's motion is completely baseless and accordingly, should be denied.

DATE: August 26, 2005          By:     s/Larry L. Miller
                                       LARRY L. MILLER
                                       I.D. PA28122
                                       1423 State Road
                                       Duncannon, PA 17020
                                       Telephone: [717]957-2828
                                       e-mail: llmmillerlaw@earthlink.net

---

[9] Northwest's cite to a fraud case, Bortz v. Noon, 729 A.2d 555 (Pa. 1999), of course, has no relevance to this negligent misrepresentation cause of action.